Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 5346 | **DATE** | 7/28/2000 |
| **CASE TITLE** | Level 3 Communications, Inc. vs. Federal Insurance Co., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion (101-1) for summary judgment is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 3 1 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 114 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | 96 C 5346 |
| ) | |
| v. ) | Judge George W. Lindberg |
| ) | |
| FEDERAL INSURANCE COMPANY and ) | |
| PACIFIC INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Level 3 Communications[1] ("Level 3"), has filed a motion for summary judgment–the third so far in this case–seeking coverage from defendants, Federal Insurance Company ("Federal") and Pacific Insurance Company ("Pacific"), its directors and officers' liability insurance providers,[2] for the costs it incurred in defending and settling a securities fraud lawsuit filed against it in 1994 and which it settled in 1996.[3] For the following reasons, the court grants in part and denies in part plaintiff's motion for summary judgment.

DOCKETED
JUL 3 1 2000

---

[1] When this suit began, Level 3 was known as Kiewit Diversified Group (Kiewit). The court presumes familiarity with the facts and holdings in its previous opinion, *Kiewit Diversified Group v. Federal Insurance Co.*, 999 F.Supp. 1169 (N.D.Ill. 1998), as well as with the Seventh Circuit's opinion, *Level 3 Communications v. Federal Insurance Co.*, 168 F.3d 956, 957 (7th Cir. 1999)

[2] Federal, the primary insurer, is responsible for up to $10,000,000 (less a $2,500,000 deductible) and Pacific, the secondary insurer, is responsible for any amount over $10,000,000.

[3] It is interesting to note that the instant case disputing insurance coverage has lasted substantially longer than the underlying securities fraud lawsuit that prompted it.

1

1/4

## BACKGROUND

In the instant motion, plaintiff seeks coverage of the $11.8 million it paid to settle the underlying lawsuit minus the amount attributable to Anthony Pompliano, the former director who falls under the policy's "insured v. insured" exclusion. Pompliano owned 25 of the 160 shares–or 15.625%–that were at issue in the Brantman lawsuit. Therefore, Level 3 seeks to recover $9,956,250–$11.8 million minus 15.625%–of the settlement pursuant to the policy language that a "loss" was "the total amount which any insured person becomes legally obligated to pay on account of each claim . . . for which coverage applies, including but not limited to, damages, judgments, settlements, costs and defense costs."

As to costs, Level 3 seeks reimbursement of $2,744,219.62[4] attributable to the defense of the lawsuit, pointing out that the insurance policy defines defense costs as "reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses . . . incurred in defending or investigating Claims." Of this amount, Federal disputes that it is obligated under the policy to cover a $300,000 bonus Level 3 paid to its attorneys, the law firm Bartlit, Beck, Herman, Palenchar & Scott ("Bartlit Beck"), and $28,428.54 Level 3 paid in out-of-pocket expenses to MFS Communications, Level 3's subsidiary and co-defendant in the underlying suit, which Level 3 maintains consisted primarily of airline and hotel costs for MFS employees who were assisting Bartlit Beck with the defense of the lawsuit. Level 3 seeks

---

[4] The defense costs for which Level 3 seeks recovery are broken down as follows: $2,388,202.41 (legal fees paid to Bartlit, Beck, Herman, Palenchar & Scott); $69,524.00 (consulting fees paid to Arthur Andersen); $258,064.67 (consulting fees paid to Price Waterhouse); and $28,428.54 (payment to MFS Communications, Inc. for defense-related out-of pocket costs).

summary judgment as to these two issues as well, asserting that the bonus and payment for out-of-pocket expenses are reasonable costs.

Level 3's fee arrangement with Bartlit Beck provided for a fixed fee of $60,000 a month and out-of-pocket expenses. In addition, the fee arrangement provided bonuses that were contingent on the outcome of the litigation. In the event of settlement prior to trial, the agreement provided for a hold-back bonus of $15,000 per month in which Bartlit Beck was "made whole (lowered fixed rate [of $60,000 a month] brought even with non-discounted fixed rate of $75,000"). In addition to this bonus, the fee arrangement included: a $500,000 bonus if the case was dismissed prior to trial; a completely discretionary bonus (in addition to the hold-back bonus) if the matter settled prior to trial; and a calculated bonus if a successful result at trial was achieved.

After the case settled on the second day of trial, Level 3 paid its attorneys a $300,000 bonus. It claims that this falls under the discretionary bonus provision and that its attorneys were entitled to the additional hold-back bonus of $15,000 a month because they avoided an unsuccessful result at trial. In addition, Pacific argues that it is not responsible for the $275,415 "hold-back" bonus Level 3 paid its attorneys.

## DISCUSSION

Summary judgment is proper when there is no genuine issue of material fact and the party who has filed for summary judgment is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the record, taken as a whole, could lead no rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party must produce sufficient affidavits and other evidentiary material to show that no genuine issue of material fact exists. *Celotex Corp. v.*

3

*Catrett*, 477 U.S. 317, 325 (1986). The court must construe all reasonable inferences in favor of the nonmoving party. *Sarsha v. Sears Roebuck & Co.*, 3 F.3d. 1035, 1038 (7th Cir. 1993).

### *Amount of Settlement Allocated to Pompliano*

Plaintiff alleges that it is entitled to recover $9,956,250 of the $11,800,000 settlement agreement. However, Federal argues that the potentially recoverable portion of the settlement is only $8,969,182 because Pompliano received a check for $2,830,818. This amount included Mrs. Pompliano's portion of the settlement as well.

Defendants argue that Mrs. Pompliano was a nominal or "technical plaintiff" and that therefore Mr. Pompliano was responsible for both his and her shares. The court finds this argument without merit as Mrs. Pompliano's 15 shares are simply not excluded by the "insured v. insured" provision. The fact that a check was made out only to Anthony Pompliano does not prevent Level 3 from recovering all but Mr. Pompliano's official share of the settlement. The language Federal cites from the Seventh Circuit's opinion directing this court to determine how much of the settlement "went to Pompliano" is not contrary to this conclusion. *See Level 3*, 168 F.3d at 960.

Pompliano owned 25 of the 160 (15.625%) shares at issue in the Brantman lawsuit. The expected conclusion would be that 15.625% is the percentage of the settlement that is not recoverable under the "insured v. insured" provision. Mrs. Pompliano owned 15 shares. Therefore, the Pomplianos should have received 25% (40 of 160 shares) of the settlement, which would be $2,950,000. Instead, the Pomplianos received only $2,830,818, which suggests the possibility that a different allocation system than percentage of stock owned may have been used to distribute the settlement amount. As the 7th Circuit pointed out in *Level 3*, the record is

4

"strangely silent" that the plaintiffs shared in the settlement in proportion to their shareholdings. *Id.*

Although Level 3 has established that Pompliano owned 15.625% of the stock in the Brantman litigation, it has not established how the $11.8 million settlement agreement was allocated and the record does not support that it was allocated according to share percentage. Therefore, the court grants plaintiffs motion for summary judgment to recover all of the $11.8 million less the amount allocated to Anthony Pompliano. However, since plaintiff has failed to establish what this dollar amount is, the court will require additional proof of how the settlement amount was allocated before it will enter judgment.

### *$300,000 Bonus*

Level 3 also alleges that defendants should reimburse it for the $300,000 bonus it paid its attorneys for what it referred to as a "favorable result" after the parties reached settlement. Level 3 argues that Federal consented to the fee agreement, knew about the discretionary bonus from the beginning and that Level 3 reminded Federal on at least one occasion that the discretionary bonus was part of the fee agreement. As a result, according to Level 3, Federal is required to provide coverage for the $300,000 bonus.

Level 3 also claims that the bonus was reasonable in that it was less than 13% of the overall fees paid to Bartlit Beck, and only about 0.5% of the difference between the $11.8 million settlement amount and the approximately $70 million sought by the plaintiffs in the underlying suit. However, plaintiffs provide no case law to support its claim that this makes the bonus reasonable. The briefs to this motion are surprisingly devoid of any citation discussing whether the fee agreement or monthly rates at issue are reasonable, which often entails establishing the general market rates or practices.

5

Defendants do not argue that the bonus was unreasonable. Instead, they simply claim that under the terms of the policies they only have to reimburse an insured for "the total amount which any insured person becomes legally obligated to pay on account of each claim . . . for which coverage applies." They claim that, pursuant to this language, they are not responsible for amounts that an insured pays voluntarily and at its complete discretion.

In addition, defendants claim that they never consented to the bonus provision in the agreement or approved the actual bonus at the time Level 3 paid it to Bartlit Beck. A letter that plaintiff submitted with its motion for summary judgment to support its position that Federal approved the bonus provision of the agreement actually indicates the opposite. In the letter, Ruth Sherman, assistant vice president of claims, states that Lisa Borelli, claims examiner, advised that the insurance company "would not be willing to pay the bonus to the attorneys, as this is not a policy of [Federal]" (emphasis added). Plaintiff offers no additional support in the record to establish Federal's explicit consent of a bonus. Because Level 3 has not provided record support as to Federal's consent or as to the reasonableness of the bonus, the court denies plaintiff's motion for summary judgment with respect to the $300,000 bonus.

### *$28,428.54 Out-of-Pocket Expenses*

Plaintiff seeks to recover out-of-pocket expenses that it spent in defense of the Brantman lawsuit. Because the Brantman lawsuit stemmed from MFS's purchase of the Brantman plaintiffs' stock, Level 3 claims that its attorneys needed the cooperation of MFS employees to prepare and defend against the lawsuit.

In an affidavit, Matthew J. Johnson, former general counsel for Level 3, stated that he approved payment of $28,428.54 to MFS for reimbursement of the expenses that MFS incurred for the litigation. As defendants point out, this is the only support that Level 3 provides for the

6

expenses in its motion for summary judgment. It has submitted nothing, either to the court or defendants, that provides explanation or support for what these expenses consisted of. Even the affidavit of Mark Johnson states that "[t]hese expenses <u>primarily</u> consisted of out-of-pocket costs" (emphasis added). Although an award of attorney's fees would generally include reasonable out-of-pocket expenses for travel and the like, Level 3 cannot expect the court to find such a vague description sufficient to explain more than $28,000.

Plaintiff claims that defendants knew that Level 3 paid the $28,428.54 to MFS and that they offer no evidence that these costs were other than the covered defense costs incurred in defending the Brantman lawsuit. However, it is plaintiffs who possess the receipts or timesheets that would provide support for its position that these costs were reasonable. Defendants do not have the ability to locate the evidence for these expenses. Since plaintiff has not provided the court with any documentation of what these expenses included, the court denies plaintiff's motion for summary judgment as to the $28,428.54 in out-of-pocket expenses.

### *$275,145 Hold-Back Bonus*

In its response to the motion for summary judgment, Pacific takes issue with plaintiff's statement that the only remaining disputes between Level 3 and Federal are the allocation to Pompliano, the $300,000 bonus and the out-of-pocket expenses. It contends that a hold-back bonus Level 3 paid to Bartlit Beck is not covered under the policy because no provision existed in the fee agreement for the payment of the hold-back bonus for a settlement <u>after</u> trial began.[5]

---

[5] According to Level 3's contract with Bartlit Beck, the hold-back bonus would be paid if (1) the matter settled <u>prior</u> to trial; (2) the case was dismissed; or (3) a successful result was reached at trial (emphasis added).

7

Furthermore, it states that only Federal has agreed to the hold-back amount and neither Pacific nor the court has been furnished with the agreement plaintiff states it made with Federal.

Level 3 responds that the $275,145 is not a bonus but is instead deferred compensation to Bartlit Beck, payable absent a poor trial result. Level 3 agrees that the agreement is silent as to the payments for a during-trial settlement, but claims that the settlement at trial is a "successful result" and that the settlement provision applies to "during trial" settlement.

The court questions this interpretation of the plain language of the fee agreement, especially considering that a "successful result at trial" required a calculated bonus. This issue, however, was not raised in Level 3's motion for summary judgment and Pacific did not file a motion for summary judgment. The court finds that this issue is inadequately briefed and not sufficiently detailed in the record. It is therefore not properly before the court for resolution and the court declines to rule on it.

## CONCLUSION

The court grants Level 3's motion for summary judgment as to the recovery of the $11.8 million less the amount allocated to Anthony Pompliano. It denies plaintiff's motion for summary judgment as to the $300,000 bonus and $28,428.54 in out-of-pocket expenses.

Once again, the court's ruling on a motion for summary judgment in this action leaves unresolved issues remaining. Despite the court's admonition to the parties to attempt to agree on the amount of judgment and despite this subsequent motion for summary judgment on the issues the parties could not resolve, the court is still unable to enter judgment in this case. The court orders plaintiff to submit forthwith evidence of how the settlement was allocated among the plaintiffs in the underlying case. Failure to do so will result in the court having to conclude that the entire amount distributed to Anthony Pompliano is excluded from coverage.

**ORDERED:** For the foregoing reasons, the court grants Level 3's motion for summary judgment as to the recovery of the $11.8 million less the amount allocated to Anthony Pompliano. It denies plaintiff's motion for summary judgment as to the $300,000 bonus and $28,428.54 in out-of-pocket expenses.

ENTER:

George W. Lindberg
United States District Judge

DATED: **JUL 2 7 2000**